**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD W. PETERS, | 3:15-cv-00472-RCJ-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| GREG COX, *et al.,* | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendant's motion to dismiss or for summary judgment (ECF No. 20). Plaintiff opposed (ECF No. 22), and defendant replied (ECF Nos. 23, 24). For the reasons stated below, the court recommends that defendant's motion for summary judgment (ECF No. 20) be denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Richard W. Peters ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings a civil rights claim against NNCC Certified Nursing Assistant, Gaylene Fukagama ("defendant").

The alleged events giving rise to plaintiff's claim are as follows. On February 7, 2014, plaintiff underwent surgery to fuse his left wrist using a "synthesizer wrist fusion plate." (ECF No. 5 at 5.) Upon his return to NNCC, plaintiff was admitted to the infirmary at NNCC's Regional Medical Facility ("RMF") where he was given an ulceration boot to "support, elevate and comfort" plaintiff's wrist while he recovered. (*Id.*) The boot remained on his left arm during his stay in the infirmary. (*Id.*) On February 24, 2014, plaintiff was released from the infirmary and returned to the yard. (*Id.*) Plaintiff was allowed to continue using the boot and was giving instructions to return it to the infirmary once he finished using it. (*Id.*)

On February 24, 2014, plaintiff returned to his unit and walked around his unit, during pill call, and in the yard with the boot.  (*Id.*)  On February 25 and 26, 2014, plaintiff walked passed prison and medical officials with the boot, and he was not stopped or informed that he was not allowed to possess the boot.  (*Id.* at 5-6.)  On February 27, 2014, while waiting in the pill call line in his wheelchair, defendant approached plaintiff and told him he was not allowed to have the boot.  (*Id.* at 6.)  Defendant then began to "maliciously and sadistically yank, pull, and twist the boot to [w]rench it off [plaintiff's] left arm."  (*Id.*)  Defendant seriously injured plaintiff's left arm, wrist, and hand.  (*Id.*)

Defendant was part of the infirmary staff who gave plaintiff the boot, she saw him using the boot, and she was working in the RMF the day plaintiff was discharged.  (*Id.*)  Plaintiff never hid the fact that he was in possession of the boot.  (*Id.*)  Medical had to schedule surgery to remove the synthesizer wrist fusion plate from plaintiff's wrist due to the "agonizing pain" in his wrist from defendant's assault.  (*Id.*)

On March 4, 2016, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, allowing plaintiff to proceed with his Eighth Amendment excessive force claim against defendant.  (ECF No. 4 at 6.)  All other claims and defendants were dismissed.  (*Id.*)

Defendant now moves for summary judgment based on the following: 1) plaintiff failed to exhaust his administrative remedies; and 2) defendant is entitled to qualified immunity.  (ECF No. 20 at 3-9.)

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be

counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos*., 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

1   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

2   material facts" will not defeat a properly-supported and meritorious summary judgment motion,

3   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

4       For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant

5   in motions and pleadings are admissible to the extent that the contents are based on personal

6   knowledge and set forth facts that would be admissible into evidence and the litigant attested under

7   penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

8   2004).

9                                    **III.    DISCUSSION**

10  **A.    Civil Rights Claims Under § 1983**

11      42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

12  deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063,

13  1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute

14  "provides a federal cause of action against any person who, acting under color of state law,

15  deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore

16  "serves as the procedural device for enforcing substantive provisions of the Constitution and

17  federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983

18  require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official

19  acting under the color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983

20  claim, the plaintiff must establish each of the elements required to prove an infringement of the

21  underlying constitutional or statutory right.

22  **B.    Failure to Exhaust Administrative Remedies**

23      **1.    Exhaustion under the PLRA**

24      Defendant argues that plaintiff did not properly exhaust available administrative remedies.

25  (ECF No. 20 at 3-7.)  The PLRA provides that "[n]o action shall be brought with respect to prison

26  conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

27  prison, or other correctional facility until such administrative remedies as are available are

28

                                          4

exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Ross v. Blake*, 136 S.Ct. 1850, 1856-57 (2016); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The PLRA requires "proper exhaustion" of an inmate's claims.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue."  *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90).

Failure to exhaust is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate.  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).  When a remedy is essentially "unknowable" such that no reasonable inmate can make sense of what it demands, it is considered to be unavailable.  *See Ross*, 136 S.Ct. at 1859-60.

## 2.  NDOC's Inmate Grievance System

The procedural rules relevant to exhaustion "are defined not by the PLRA, but by the prison grievance process itself."  *Bock*, 549 U.S. at 218.  The grievance process at NDOC institutions is governed by Administrative Regulation ("AR") 740.[1]

NDOC's grievance process features three levels, beginning with the informal grievance.  If an inmate is unable to resolve the issue through discussion with an institutional caseworker, the inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights

---

[1] Defendants attach an unauthenticated copy of AR 740 to their motion.  (*See* ECF No. 20-1.)  However, AR 740 is a public document readily available online, and the court will cite to this online version.  *See* NDOC, *Administrative Regulation 740: Inmate Grievance Procedure* (2014), http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20091614.pdf.

claims," or within ten days for any other issues, including classification and disciplinary.   AR 740.04, 740.05(4).   The inmate's failure to submit the informal grievance within this time frame "shall constitute abandonment of the inmate's claim at this, and all subsequent levels."   *Id.* at 740.05(8).   NDOC staff is required to respond within forty-five days.   *Id.* at 740.05(12).   An inmate who is dissatisfied with the informal response may appeal to the formal level within five days.   *Id.*

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation."   *Id.* at 740.06(2).   The grievance is reviewed by an official of a higher level, who has forty-five days to respond. *Id.* at 740.06(1), (4).   Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review.   *Id.* at 740.07(1).   Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached.   *Id.* at 740.07(3), (4).   Once an inmate receives a response to the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

**3.        Exhaustion of Plaintiff's Claim regarding the February 27, 2014 Incident**

Plaintiff's claim against defendant concerns an alleged assault that occurred on February 27, 2014.   (*See* ECF No. 5 at 5-6.)   Defendant argues that plaintiff did not properly exhaust his available administrative remedies, as he failed to follow the grievance procedure outlined by AR 740.   (*See* ECF No. 20 at 6-7.)   Specifically, defendant contends that plaintiff changed the nature of his grievance at the first and second levels, thus improperly grieving multiple issues.   (*Id.*; *see also* ECF No. 20-2.)   Defendant also argues that plaintiff abandoned his grievance by failing to appeal in a timely manner; however, defendant withdrew this argument after plaintiff argued this was untrue.   (*See* ECF Nos. 20 at 6-7, 22 at 1-4, 23 at 2.)   Plaintiff contends that he was never instructed to refile a new informal grievance adding to his original claim.   (*See* ECF No. 22 at 1-2.)   Defendant incorrectly asserts that plaintiff fails to dispute her argument that plaintiff failed to follow the grievance process properly.   (*See* ECF No. 23 at 2.)

The court has thoroughly reviewed the grievances (ECF No. 20-2) and is not persuaded that plaintiff failed to properly exhaust his administrative remedies.   On February 27, 2014, plaintiff filed informal Grievance Number 20062975457, which discusses plaintiff's frustration that the boot was taken from him when he still needed it.  (*See id.* at 2-3.)  On February 27, 2014, plaintiff also filed an Emergency Grievance, which more specifically discussed the alleged assault and requested that the boot be returned.  (*See id.* at 4-5.)  The same day, an NDOC official responded to the Emergency Grievance stating: "Per AR 740 this is not an emergency. Surgeon has instructed I/M to use arm & hand."  (*Id.* at 4.)  The next day, February 28, 2014, plaintiff filed another Emergency Grievance, which went into even more detail about defendant's alleged assault, complained that he was in pain, and requested that a doctor examine his wrist.  (*See id.* at 6-7.)  The same day, an NDOC official responded to the Emergency Grievance stating: "This is not an emergency, wear your splint and sling as directed."  (*Id.* at 6.)  On March 18, 2014, John Keast denied plaintiff's informal Grievance Number 20062975457, and plaintiff was told, "The response given on your Emergency Grievance dated 2/27/14 is upheld. Grievance denied."  (*Id.* at 8-9.)  Plaintiff received the response on April 23, 2014.  (*See id.*)  On April 25, 2014, plaintiff filed a first level grievance discussing defendant's alleged assault.  (*See id.* at 10-14.)  On May 1, 2014, plaintiff's first level grievance was denied and he was told, "Your sling and brace if is medically necessary will be ordered by the provider. If you are having a[n] issue write a kite to be seen."  (*Id.* at 15-16.)  Plaintiff received the response on August 15, 2014.  (*See id.*)  Finally, on August 16, 2014, plaintiff filed his second level grievance.  (*See id.* at 17.)  On November 21, 2014, plaintiff's second level grievance was denied and he was told, "Agree with first level response."  (*Id.* at 18.)

It is well established that PLRA requires "proper exhaustion" of an inmate's claims.  *See Woodford*, 548 U.S. at 90.  Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue."  *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90).  Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90.  Here, it appears

plaintiff followed all required steps to allow prison officials to reach the merits of the issue. Plaintiff filed an informal grievance, two emergency grievances, a first level grievance, and a second level grievance, and he filed all grievances within established deadlines.  (*See* ECF No. 20-2.)  Defendant argues that because the subject of plaintiff's informal grievance was not exactly the same as his first and second level grievances, he did not properly exhaust his administrative remedies.  (ECF No. 20 at 6-7.)  However, plaintiff was never made aware of the fact that he needed to resubmit an informal grievance adding in the specifics of the assault.  It appears he felt what he had alleged in his informal and emergency grievances was enough.  It also appears that NDOC officials found plaintiff's grievance to be sufficient, as they continued to respond up to the second and final level.  Additionally, the response to plaintiff's informal grievance specifically mentioned the emergency grievance.

Given all of the above, there is a genuine issue of material fact as to whether plaintiff properly exhausted his administrative remedies.  Defendant has not carried her burden of demonstrating that plaintiff failed to exhaust his administrative remedies.  Accordingly, the court recommends that defendant's motion for summary judgment be denied.

**C.     Qualified Immunity**

Finally, defendant argues that she is entitled to qualified immunity and therefore summary judgment should be granted in her favor.  (ECF No. 20 at 7-9.)

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities.  *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100).  State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine.  More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established."  *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S.

223, 232, 236 (2009)).  A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case.  *Pearson*, 555 U.S. at 240–42.

Defendant argues that she is entitled to qualified immunity because "she could have reasonably believed that removing contraband from an inmate was lawful."  (ECF No. 20 at 8.) Plaintiff contends that defendant is not entitled to qualified immunity as "an unprovoked physical attack" violates a clearly established constitutional right.  (ECF No. 22 at 2.)  Plaintiff's complaint alleges an Eighth Amendment excessive force claim, not merely a claim about removing contraband.  Because defendant's "entitlement to qualified immunity depends on the resolution of disputed issues of fact in [her] favor," qualified immunity is not warranted at this time.  *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003); *Espinosa v. City & Cnty. Of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (unresolved issues of fact were material to the reasonableness of the officers' belief in the legality of their actions, and precluded summary judgment).

## IV.   CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendant's motion for summary judgment (ECF No. 20) be denied.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

1

### V.      RECOMMENDATION

2        **IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment

3   (ECF No. 20) be **DENIED**.

4    **DATED**: November 17, 2016.

5                                    _____

                                     **UNITED STATES MAGISTRATE JUDGE**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28